IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SHANE L. SMITHER, | CV 20-121-BLG-SPW |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security Administration,* | |
| Defendant. | |

Plaintiff Shane Smither ("Smither") has filed a complaint pursuant to 42 U.S.C. §§ 405(g), 1383(c) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-83f. (Docs. 2, 11.) The Commissioner subsequently filed the Administrative Record ("A.R."). (Doc. 8.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking either reversal of the Commissioner's denial or remand for further proceedings. (Doc. 13.) The motion is fully briefed and ripe for the Court's review. (*See* Docs. 14, 15.)

For the reasons set forth herein, and after careful consideration of the record and applicable law, the Court finds this matter should be REMANDED for further proceedings.

## I.   PROCEDURAL BACKGROUND

Smither filed his application for disability insurance benefits and supplemental security income on March 24, 2017.  (A.R. 160-166.)  Following initial denials, a hearing before ALJ Tanya Dvarishkis was held on August 20, 2019.  (A.R. 12.)  The ALJ issued a written decision on October 1, 2019, finding Smither not disabled.  (A.R. 12.)  Smither requested review of the ALJ's decision before the Appeals Council, but the request was denied.  (A.R. 1.)  Smither thereafter filed the instant action.  (Doc. 2.)

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

2

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the

claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   FACTUAL BACKGROUND

### A.   The Hearing

A hearing was held before the ALJ on August 20, 2019, in Billings, Montana.  (A.R. 34.)  Smither testified that he lived alone and that his highest level of education was a G.E.D.  (A.R. 37.)  He does not have a driver's license and travels primarily on foot or by bus.  (A.R. 38.)  He testified that he received both housing assistance and SNAP benefits.  (A.R. 38.)  Smither recounted a spotty work history, with brief paid work at Chipotle and Starbucks and some volunteer labor for the Montana Rescue Mission.  (A.R. 39.)  He described his approximately nine-week tenure at Starbucks as a cashier as a bad fit because it was too high-stress.  (A.R. 40.)  Similarly, Smither stated that he worked for approximately three months at Chipotle as a cashier but left because of interpersonal conflicts and stress-related outbursts.  (A.R. 40-41.)  These outbursts involved yelling and profanity.  (A.R. 42.)  In general, Smither stated that he cannot maintain personal

5

relationships over time because he builds up insurmountable resentments and cannot control his compulsive and emotional behavior in the moment when he becomes frustrated. (A.R. 47.)

At home, Smither stated that he lived in "profound isolation" with no personal relationships and only leaving the house at night when fewer people are around. (A.R. 48.) Smither described generally being independent in cooking, cleaning, and hygiene, although he noted that during times of more severe depression, cleaning and hygiene took a back seat. (A.R. 48-49.) Physically, Smither stated that during periods of depression, he experienced trouble sleeping and tense muscles. (A.R. 51.) Smither said that, at the time of the hearing, he wasn't on any medications or in counseling. (A.R. 51.) Mentally, he described his low threshold for frustration, deep guilt, shame, and regret stemming from his depression, and a circular pattern of depression, low self-worth, and suicidal ideation. (A.R. 58.) He also reported zero sum thinking and fixation, particularly on negative issues. (A.R. 59.)

After Smither, the vocational expert ("VE"), Anne Arrington, testified. The VE summarized and rated Smither's past work history per DOT categories. (A.R. 61-68.) The ALJ posed a hypothetical: could a person who cannot be exposed to greater than moderate noise levels, avoid all exposure to unprotected heights, moving mechanical parts, and hazards, avoid operation of a motor vehicle, low

6

stress work, no high production or pace work, limited to brief, superficial contact

with coworkers and the public, and receive criticism or feedback from supervisors

no more than occasionally perform any of Smither's past relevant work? (A.R.

68.) The VE answered "no." (A.R. 68.) The ALJ asked if there were jobs existing

in the national economy within those limitations, and the VE replied that there

were, including commercial cleaning work, laundry work, and industrial cleaning

work. (A.R. 69-70.) The VE further testified that a person who was off-task for

more than 15 percent of a typical eight-hour workday or missing more than two

days of work per month would not allow someone to sustain competitive

employment. (A.R. 70.)

### B.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering

Smither's claim. (A.R. 18.)

At step one, the ALJ found that Smither had not engaged in substantial

gainful activity since his alleged onset date of January 3, 2017. (A.R. 17.)

At step two, the ALJ found Smither has the following severe impairments:

persistent depressive disorder, disruptive mood dysregulation disorder, panic

disorder, borderline personality disorder, general anxiety disorder, and major

depressive disorder. (A.R. 18.) The ALJ also found that numerous impairments

were non-severe, including post-traumatic stress disorder, intermittent paroxysmal atrial fibrillation, and a possible umbilical hernia.  (A.R. 18-19.)

At step three, the ALJ found that Smither does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the appendix, specifically 12.04, 12.06, and 12.08.  (A.R. 19.)  The ALJ determined that Smithers did not meet either the "paragraph B" or "paragraph C" criteria.  (A.R. 19-20).

At step four, the ALJ stated Smither has the residual functional capacity ("RFC") to perform a full range of work, but with several nonexceptional limitations.  (A.R. 20.)  Those limitations include: cannot be exposed to greater than moderate noise levels; avoid all exposure to unprotected heights, moving mechanical parts, and hazards; avoid operation of a motor vehicle; low stress work; no high production or pace work; limited to brief, superficial contact with coworkers and the public; and receive criticism or feedback from supervisors no more than occasionally.  (A.R. 20).  However, the ALJ found that Smither is unable to perform any past relevant work.  (A.R. 25.)

Finally, at step five, the ALJ found that based on Smither's age, education, work experience and RFC, Smither has acquired work skills from past relevant work that are transferable to other occupations existing in significant numbers in the national economy.  (A.R. 26.)

Accordingly, the ALJ found Smither not disabled.  (A.R. 27.)

## IV.    Discussion

Smither argues that the ALJ erred in (1) discounting the findings and opinions of treating counselors and medical providers when addressing Smither's RFC; (2) denying that Smither met a Listing; and (3) failing to incorporate all limitations into the vocational consultant's hypothetical.  (Doc. 15 at 1-2.)  The Court will address each in turn.

### A.    ALJ's Evaluation of Medical Source Opinions

Smither argues that the ALJ improperly discounted the findings and opinions of medical providers and treating counselors that corroborate Smither's testimony as to the severity of his impairments.  (Doc. 13 at 17).  The Commissioner argues that the ALJ carefully considered the available medical records and discussed many treatment notes, affording those notes due consideration.  (Doc. 14 at 5).  The ALJ discussed the provider notes in detail. (See A.R. 21-23) (discussing treatment with Erin Saxer, Garth Brand, Angela Price, Diane Quick, James Whitworth, and Abigail Dalton between January 2017 and February 2019.)

Despite this, Smither contends that the ALJ's calculation of Smither's RFC was flawed because the ALJ ignored regulations SSR 16-3p and 96-8p, which each

require consideration of all available evidence in the record corroborating

claimant's alleged symptoms.  This contention is incorrect.  The ALJ found that:

> Overall, the medical evidence reflects the claimant's mental disorders have been attenuated by prescribed medication and therapy, as long as he takes his medication as directed and regularly participates in therapy. Unfortunately, the claimant has not participated in care from a psychiatrist, psychologist, or therapist since October 2018, and has not been on medication (testimony). The symptoms described during the hearing are more reflective of an individual not participating in any form of treatment for almost one year. The claimant has not required emergency room care or inpatient hospital stay for acute exacerbations of mental illness. He has not participated in a day treatment program. Nevertheless, giving the claimant every benefit of the doubt, the undersigned finds the claimant would be limited to low stress work with limited social interaction with the public, co-workers, and supervisors, with additional environmental limitations, as detailed above.

(A.R. 23).  Based on the above review, it appears that the ALJ carefully

considered both Smither's testimony and the medical record before her in

evaluating the effect of treatment on Smither's RFC.  The Court agrees with the

Commissioner that "given the contrast between Smither's activities when he was

treating, and his testimony at the hearing when he was not, the ALJ's finding was

reasonable. (Doc. 14 at 10).  Further, the Court is bound to uphold the

Commissioner's decision even if the evidence presented may point to more than

one rational interpretation but one of those interpretations supports the ALJ's

determination. *Burch*, 400 F.3d 676, 679 (9th Cir. 2005).  The Court affirms the

ALJ's determination regarding the Smither's RFC.

**B.    Listing Denial**

Smither claims that the ALJ erred in denying that Smither met a Listing.

(Doc. 15 at 1).  The ALJ found:

> The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant had no limitation. The claimant is able to prepare meals, go to medical appointments, take his medication, take public transportation, shop, read, use the computer, apply for jobs, housing, food and healthcare, and apply for college admission (4F; *SF;* 6F; 9F; testimony; for specific citations, see below).
>
> In interacting with others, the claimant had a marked limitation. The claimant has significant issues with social interaction resulting in isolation. However, he has demonstrated the ability to shop independently, meet with medical providers, social workers, and vocational rehabilitation, take public transportation, live with friends, live at a shelter, and travel to the State of Washington (4F; *SF;* 6F; 9F; testimony; for specific citations, see below).
>
> With regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation. The claimant is able to make a set schedule for planning meals, prepare meals, read, use a cell phone, use the internet, handle his own medical care, apply for jobs, housing, food and healthcare, and apply for college admission (4F; *SF;* 6F; 9F;

testimony; for specific citations, see below). As for adapting or managing oneself, the claimant had experienced a moderate limitation. At times, the claimant struggles with personal hygiene, and reports altercations with others. However, with proper medication, his poor impulse control has been attenuated, and he exhibits appropriate behavior with medical providers, social workers, and vocational rehabilitation (4F; *SF;* 6F; 9F; testimony; for specific citations, see below).

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant has been living independently, and has not required a highly supportive living environment. Furthermore, he has not required emergency room care, hospitalization, or a day treatment program for mental health issues.

(A.R. 21-22).

Smither asserts two bases for overturning the ALJ: first, the ALJ did not consider the amount of time required for therapy contrary to SSR 96-8p; and second, that the ALJ failed to provide evidence from the record that Smither did not meet the paragraph C criteria. (Doc. 13 at 25-26). Both arguments fail. SSR 96-8p requires that, when determining a claimant's RFC under steps 4 and 5, the ALJ's determination must be based on all available materials and give controlling weight to properly supported medical opinions. As a matter of law, the RFC calculation does not apply to a Listings determination. SSR 96-8p ("assessment of RFC is used at step 4 of the sequential evaluation process to determine whether an

individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience.") Therefore, Smither's argument does not apply. Secondly, Smither's bare assertion that the ALJ did not consider the paragraph C criteria is plainly contradicted by the record. (A.R. 22). Additionally, it is the claimant's burden at step 3 to demonstrate that they meet or exceed the listing criteria. *Burch*, 400 F.3d at 683. The Court affirms the ALJ's decision that Smither did not meet the Listings.

## C.   Vocational Consultant's Hypothetical

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Smither argues that the hypothetical the ALJ relied on to find he could perform other work at step five was deficient because it did not incorporate all of his limitations. Specifically, Smither asserts the ALJ failed to incorporate the

"amount of therapy visits, along with medical care visits, which would preclude SGA pursuant to testimony by the vocational consultant." (Doc. 15 at 5). An ALJ's failure to consider the effect of a claimant's treatment needs constitutes reversible error. *See e.g. Tyler v. Saul*, 2021 WL 2562492, *6 (D. Mont. June 23, 2021) (finding ALJ erred by failing "to note, weigh, or otherwise consider the frequency of treatment entirely in their decision"); *Mariah v. Saul*, 2021 WL 1660947, *8 (D. Mont. April 28, 2021) (remanding action where the ALJ failed to consider the plaintiff's treatment needs in assessing the RFC); *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (finding the ALJ's decision was not supported by substantial evidence because the effect of the claimant's treatment regimen for back injury was ignored); *Kim v. Saul*, 2020 WL 872308, *9-11 (D. Minn. Jan. 28, 2020) (holding that where the objective evidence showed the plaintiff had medical appointments on more than 50 days in a 33-month period, "the ALJ must explain how this course of treatment is reconcilable with the vocational expert's testimony regarding tolerated absences").

At the hearing, the ALJ posed several hypotheticals to the vocational expert, each more restrictive than the last. The vocational expert responded to each hypothetical that, while the types of occupations were limited by Smither's abilities, there were jobs in the economy he could perform. The ALJ then discussed a hypothetical where the individual would exceed the two 15-minute

14

breaks typically provided by employer or that the individual would occasionally miss more than two workdays in a month for whatever reason. (A.R. 82-83). The vocational expert responded that these limitations would not allow an individual to work at the SGA level and find competitive employment in the current economy due to the need for time off task and missed days. (A.R. 83). Despite this response, the ALJ failed to include any mention of the discussion in her final decision. (A.R. 34-35). Smither contends this failure to consider the need for multiple absences from work each month due to medical visits and other needs was in error. Smither asserts, as demonstrated by the medical record, that in 2017 Smither averaged 3.66 medical visits per month and in 2018 he averaged 3.25 visits per month. (Doc. 15 at 3). Obviously, Smither's need for time off work to attend the therapy appointments necessary for him to work will fluctuate from month to month, but the Court is persuaded by Smither's argument. His impairments have required extensive medical care, including therapy, and will continue to do so in the future in order for him to be able to function in the workplace. Therefore, the Court finds the ALJ's failure to consider the side effects of Smither's treatment, including the documented need to miss workdays for medical visits, constitutes reversible error.

## V.    REMAND OR REVERSAL

Smither asks the Court to reverse the ALJ's decision and grant him benefits. (Doc. 13 at 5.) "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall incorporate the need to miss work for therapy and other treatment into the VE's hypothetical.

## VI.    CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision is REVERSED, and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

**IT IS ORDERED**.

DATED this  *18th*  day of February 2022.

16

SUSAN P. WATTERS
United States District Judge